E-FILED
Monday, 30 November, 2020  12:50:06 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| BRADLEY A. BENSENBERG, Executor of the Estate of DONNA J. BENSENBERG, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 4:17-cv-04213-SLD-JEH |
| FCA US LLC, | ) ) | |
| Defendant. | ) ) | |

ORDER

This cause is before the Court on Defendant FCA US LLC's Daubert Motion to Bar the

Testimony of Plaintiff Bradley Bensenberg's Liability Expert, Bahram Ravani, Ph.D. and

Request for Oral Argument, ECF No. 41, Motion to Strike Declarations of Plaintiff's Liability

Expert, Bahram Ravani, Ph.D, ECF No. 54, Motion for Summary Judgment Pursuant to Rule 56

and Local Rule 7.1(D), ECF No. 43, and Motion to Strike Brad Bensenberg's Declaration in

Opposition to Defendant's Motion for Summary Judgment, ECF No. 53.  For the reasons that

follow, the motion to bar is GRANTED IN PART and MOOT IN PART, the motion to strike

declarations of Dr. Ravani is DENIED, the motion for summary judgment is GRANTED, and

the motion to strike Bensenberg's declaration is GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

On September 20, 2015, Donna Bensenberg was driving a 2008 Chrysler Aspen

("Aspen" or "truck") when she experienced a medical episode that caused her to lose

---

[1] At summary judgment, a court "constru[es] the record in the light most favorable to the nonmovant and avoid[s] the temptation to decide which party's version of the facts is more likely true."  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  The facts related here are taken, unless otherwise noted, from Defendant's undisputed material facts, Mot. Summ. J. 2−5; Plaintiff's undisputed material facts, disputed material facts, undisputed immaterial facts, and additional material facts, Resp. Mot. Summ. J. 3−10, ECF No. 49; Defendant's reply to Plaintiff's additional facts, Reply 1−5, ECF No. 56; and from the exhibits to the filings.

consciousness.  The vehicle left the road and launched into the air before coming to rest in a ditch.  The vehicle was equipped with front and side airbags but the front airbag did not deploy.  Bensenberg was wearing her seat belt during the crash.

Plaintiff alleges the airbag and seat belt systems failed to protect Bensenberg during the accident and she suffered injuries as a result.  Plaintiff brings five product liability counts against Defendant FCA US LLC, the entity formerly known as Chrysler Group LLC.  Fourth Am. Comp. ¶ 7, ECF No 27.  Counts I–III allege the Chrysler Aspen's airbag and seatbelt systems were unreasonably dangerous because Defendant defectively designed and manufactured them and failed to warn of the defects, *id*. ¶¶ 33–49; Counts IV–V allege Defendant negligently designed and manufactured the airbag and seat belt systems and negligently failed to warn of the defects, *id*. ¶¶ 50–61.[2]

Defendant filed several motions: a motion to bar the testimony of Dr. Ravani, a motion to strike Dr. Ravani's declarations, a motion for summary judgment, and a motion to strike Bensenberg's declaration.

## DISCUSSION

### I.  Motions to Strike

#### a.  Motion to Strike Dr. Ravani's Declarations

Dr. Ravani provided three declarations in support of Plaintiff's response to the motion to bar his testimony and for summary judgment.  Ravani Decl. I, Resp. Mot. Bar Expert Test., ECF No. 48-2; Ravani Decl. II, Resp. Mot. Summ. J., ECF No. 49-2; Ravani Decl. III, Resp. Mot. Summ. J., ECF No. 49-3.  Defendant moves to strike these declarations because they reveal new analyses and opinions and are untimely.  *See* Def.'s Mot. Strike Ravani ¶ 6.  Specifically,

---

[2] The Court interprets the Fourth Amended Complaint to allege strict liability, negligence, and failure to warn claims about both the airbag and seat belt systems.  *See* Fourth Am. Compl. ¶¶ 33–61.

Defendant objects that Dr. Ravani's analysis concerning the Defendant's crash testing and its comparison to the subject Aspen's damage is a violation of the court scheduling order and argues it is prejudicial to Defendant's case. *Id.* (referring to Ravani's Decl. II ¶ 11). Plaintiff points out that Defendant mentions only one allegedly new opinion—the crash comparison—and argues that this was not actually a new opinion but additional evidence to support one of Dr. Ravani's previously disclosed opinions. Resp. Mot. Strike Ravani 4–6, ECF No. 59.

Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires the proponent of expert testimony to disclose a witness's written report that contains, among other things, a "complete statement of all opinions the witness will express and the basis and reasons for them." A party must supplement both the information included in the report and provided during the expert's deposition "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Id.* 26(e)(1)(A), (2). "Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due," *id.* 26(e)(2); in other words, at least 30 days before trial, *id.* 26(a)(3). "[I]f the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), [the disclosure must be made] within 30 days after the other party's disclosure." *Id.* 26(a)(2)(D)(ii). A violation of Rule 26(a) or (e) requires exclusion of that "evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* 37(c)(1).

In Dr. Ravani's second declaration, he asserted that "the report and deposition testimonies of defendant's accident reconstruction and biomechanical experts were not available

. . . to evaluate their analyses and opinions." Ravani Decl. II ¶ 3. Defendant disputes the accuracy of this statement because "Defendant produced the expert reports of Dan Toomey and Matt Weber on January 13, 2020." Def.'s Mot. Strike Ravani ¶¶ 3–4. Having reviewed Defendant's crash test data on the Aspen, Dr. Ravani concluded that the crash test at the must-fire speed of approximately 16 miles per hour ("mph") to a non-deformable barrier caused less front-end damage (depicted in photos attached to the declaration) than the accident here caused to the subject Aspen. *Id.* ¶ 11. As Plaintiff rightly points out, Dr. Ravani consistently opined, in his report and deposition testimony, that the Aspen was traveling closer to 53 mph than 10 mph prior to impact. Therefore, Dr. Ravani's opinion of the crash test data is not a new opinion; he is simply using this new evidence to support his original speed-of-impact opinion. Ravani Dep. 97:19–25, 98:6–10; Ravani Report 13–17. Even if it should have been disclosed earlier, any failure to do so was harmless. The Court DENIES Defendant's motion to strike Dr. Ravani's declarations.

### b.  Motion to Strike Brad Bensenberg's Declaration

Defendant moves to strike Bensenberg's declaration because it contains various opinions that are more appropriate for expert testimony and because the declaration prejudices Defendant as it was offered after the close of discovery. Def.'s Mot. Strike Bensenberg 1–3. Bensenberg's estimates of the speed and force at which the crash occurred are excluded as Plaintiff did not timely disclose Bensenberg as an expert. *See* Fed. R. Civ. P. 26(a)(2)(B)(i); *id.* 37(c)(1). Additionally, the list of other accidents, Bensenberg Decl. ¶ 40, Bonner Decl. Ex. 4, Def.'s Mot. Summ. J. Ex. 3, ECF No. 49-13, are insufficiently supported and are irrelevant. The Court rejects Bensenberg's testimony that his mother "would have obeyed . . . a warning" to place "her seat in a safe position," *id.* at ¶ 35, as speculation. The rest of the declaration is admissible

because it is based on either his personal knowledge, Fed. R. Evid. 602, or lay opinion, Fed. R. Evid. 701. Defendant's motion to strike Bensenberg's declaration is GRANTED IN PART and DENIED IN PART.

## II. Motion to Exclude Expert Testimony

In Dr. Ravani's twenty-page report, he concluded the Aspen's airbag and seat belt system did not "protect[] the driver from contact forces to her body that [we]re the proximal cause of her diagnosed injuries." Ravani Report 18, Mem. Supp. Mot. Bar Expert Test. Ex. C, ECF No. 42-4. He also concluded that if the airbag algorithm inhibited deployment when a driver, like Bensenberg, sat close to the steering wheel in the "front zone" or the seat belt system was unable to protect a driver sitting in the "front zone," Defendant had a duty to warn of this danger and did not do so. *Id.* Moreover, he decided that if the severity of the accident "was below the threshold for airbag deployment, then the seatbelt did not provide the needed protection either due to defective design of the seatbelt system or because [Bensenberg's] seat was in the front zone." *Id.* at 19. And if the accident was sufficiently severe to reach "the airbag deployment threshold (for the front airbag) . . . , then the airbag system was defective in not deploying the airbag in such a high-energy impact." *Id.*[3]

### a. Legal Standard

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles

---

[3] The Court assumes Dr. Ravani's opinion is limited to a design defect because he does not refer to a manufacturing defect in his either his report or deposition.

and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts act as gatekeepers "to ensure that all admitted expert testimony satisfies the Rule's reliability and relevance requirements." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993)). The district court's role is to evaluate experts based "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "As a general rule, questions relating to the bases and sources of an expert's opinion affect only the weight to be assigned that opinion rather than its admissibility." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1119 (N.D. Ill. 2005). The factfinder remains "the arbiter of the weight and credibility of expert testimony." *Stollings*, 725 F.3d at 765.

Rule 702 and *Daubert* outline a three-part analysis for the admissibility of expert testimony. The court must (1) "determine whether the witness is qualified"; (2) "whether the expert's methodology is scientifically reliable"; and (3) "whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (quotation marks omitted). "The goal of *Daubert* is to assure that experts employ the same intellectual rigor in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quotation marks omitted). Further, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*, 522 U.S. at 146. "A court may conclude

6

that there is simply too great an analytical gap between the data and the opinion proffered." *Id*. The testimony's proponent bears the burden of establishing the admissibility requirements by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

  **b.**  **Analysis**

   **i.**  **Testimony Concerning Defects in Airbag System**

Defendant argues that Dr. Ravani should be barred from testifying as to any alleged design or manufacturing defect in the airbag system because he is not qualified to render this opinion and his methodology is unreliable. Mem. Supp. Mot. Bar Expert Test. 6–10, ECF No. 42. Plaintiff disputes that Dr. Ravani is insufficiently qualified to offer an opinion, Resp. Mot. Bar Expert Test. 2–8, ECF No. 48, and argues that he has utilized a scientifically reliable methodology in crafting his defect opinions, *id.* at 8–15. Because the Court finds that Dr. Ravani has not utilized a methodology that supports his opinion that the airbag system was defective, the Court need not consider whether he is qualified to render an opinion on the alleged design or manufacturing defect in the airbag system.

"[T]he court's gatekeeping function focuses on an examination of the expert's methodology." *Smith v. Ford Motor Co*., 215 F.3d 713, 718 (7th Cir. 2000). *Daubert* provides a nonexclusive list of factors for a court to consider in determining whether an expert's methodology is reliable: "(1) whether the theory can be and has been verified by the scientific method through testing; (2) whether the theory has been subjected to peer review; (3) the known or potential rate of error; and (4) the general acceptance of the theory in the scientific community." *Chapman v. Maytag Corp*., 297 F.3d 682, 687 (7th Cir. 2002). But the *Daubert* inquiry is flexible and the listed factors "neither necessarily nor exclusively appl[y] to all experts

or in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  Courts have "latitude in determining not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010).

For this case, Dr. Ravani was asked to evaluate the "functional design and performance of the restraint system" in the Aspen and to provide "an accident reconstruction and biomechanical evaluation of the injury producing forces" from an engineering viewpoint that "involve[s] principles of engineering design, dynamics, kinematics and biomechanical engineering." *Id*. at 1.  Dr. Ravani's analysis began with reconstructing the accident.[4]  He inspected the accident site and the truck's damage and reviewed witness depositions, Bensenberg's video-taped interview, the truck's event data recorder ("EDR") data,[5] the sheriff's office incident report, photographs of physical evidence at the site, and fundamental principles of vehicle kinematics to determine that when Bensenberg blacked out, the truck gradually crossed the yellow line and left the roadway without brake application or significant changes in its speed. *Id*. at 5.  The EDR revealed that the truck's initial speed was around 58 mph and then reduced to 53 mph when it left the roadway and became airborne and the sensors were no longer able to record its speed.  Ravani Dep. 62:5–9, 85:15–19, Mem Supp. Mot. Bar. Expert Test. Ex. B, ECF No. 42-3.  The curtain airbags deployed due to some partial roll motion prior to the truck reaching its final resting spot.  Ravani Report 6.  The seat belt pretensioners were activated when the curtain airbags deployed.  *Id*. at 10.  The truck traveled over uneven terrain in the ditch, sustaining damage to the underbody components, the front end, the roof, and some fenders.  *Id.*

---

[4] Defendant does not dispute Dr. Ravani was qualified to engage in accident reconstruction.
[5] EDR is "a device installed in a motor vehicle [used] to record technical vehicle and occupant information for a brief period of time (seconds, not minutes) before, during and after a crash."  Event Data Recorder, NHTSA, https://www.nhtsa.gov/research-data/event-data-recorder (last visited November 30, 2020).

at 5, 8, 13–17.  Dr. Ravani could not use crush analysis to help determine the car's speed and the severity of the impact because the impact was distributed throughout the underbody and front end.  Ravani Dep. 61:12–62:4, 88:5–22.  Dr. Ravani calculated, considering the g-forces and the deceleration of the truck, that it was traveling closer to 53 mph than 10 mph at impact, but could not give a more specific answer because of the damage distribution and lack of physical evidence.  *Id.* at 96:13–98:2, 98:6–10; Ravani Report 13–17 (Dynamic Analysis).  Defendant has not argued that these methods were unlikely to produce a reliable estimate of the Aspen's speed at final impact.

During his deposition, Dr. Ravani explained that the airbag deployment threshold was typically "about a delta-v of 10 miles an hour."[6]  Ravani Dep. 98:11–16.  He did not know the Aspen's deployment threshold but concluded that it was more likely than not that the front airbag threshold had been met.  *Id*. at 122:16–123:11 ("I cannot say, you know, 80 or 90 percent, but more than 50 percent.").  In his report, Dr. Ravani stated: "[i]f the accident had[] a higher severity reaching the airbag deployment threshold (for the front airbag) as it could . . . then the airbag system was *defective* in not deploying the airbag in such a high-energy impact."  Ravani Report 19 (emphasis added).  The airbag manufacturer's diagnostic tool found no faults or problems with the system, Ravani Dep. 124:6–15, so he draws a possibility of a design defect, *id*. at 127:7, from the fact the airbag did not deploy and from other reports that airbags in similar vehicles also failed to deploy, *see id*. at 125:2–12.

> Either everything was fine, so the air bag threshold was not reached. That contradicts the testimony of the witnesses and the reading from EDR at the beginning, or that it could be that the entire design of the system, including location of the sensors, or the types of sensors that was used, was not properly – did not foresee a situation like this. And this situation is foreseeable. Many cars go off the record and hit facedown to an embankment.

---

[6] Delta-v is a measurement used to calculate a change in velocity.

9

*Id*. at 128:5–13.

The Court does not take issue with Dr. Ravani's opinion that the crash was so severe that it likely met the industry standard deployment threshold, but rather with his jump from this premise to the conclusion that the airbag system was thus defective.  Dr. Ravani offers no evidence to establish how the airbag system's design was defective, *id*. at 128:17–129:13 (testifying he did not know how it was designed), or why the system or the component failed, *id*. at 16:25–17:11 (testifying that the system failed to execute its function, but that he did know if any of the component pieces of the airbag system failed).  He concludes the cause from the effect.

Dr. Ravani's opinion is not reliable because he has not "adhere[d] to the same standards of intellectual rigor that are demanded in [his] professional work."  *Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996).  His opinion works backward from the non-deployment of the front airbag in a high-energy impact to his hypothesis that a nebulous defect in the airbag system caused the non-deployment.  Plaintiff acknowledges this deficit: "Dr. Ravani was unable however to determine the underlying cause for the failing airbag and/or the seatbelt but reasoned that the combination of the components of the restraint system that failed to provide Plaintiff with sufficient survivable occupant space for her to be protected by the restraint system."  Resp. Mot. Bar Expert Test. 17 (quotation marks omitted).

In *Clark v. Takata Corp.*, 192 F.3d 750, 752–53 (7th Cir. 1999), the plaintiff sued his car manufacturer alleging that his seat belt was defective because it unlatched during a rollover accident.  During the plaintiff's expert's deposition, the expert revealed that he had simply assumed that the seat belt had unbuckled and that "a properly functioning lap belt would have prevented the plaintiff from . . . striking the roof."  *Id*. at 757–58.  The court found that because

he assumed "the very fact that he ha[d] been hired to prove, his testimony [wa]s not helpful to

the trier of fact in determining that same fact in issue." *Id.*  The expert's "second opinion, that a

properly functioning lap belt would have prevented [the plaintiff] from moving upward four

inches and striking the roof of the vehicle, lacked reliance on any stated methodology or the

scientific method." *Id.* at 759 (quotation marks omitted).  Here, Dr. Ravani's opinion assumes

the airbag was defectively designed because it failed to deploy.  "An expert must substantiate his

opinion; providing only an ultimate conclusion with no analysis is meaningless." *Id.* at 757

(quotation marks omitted).  It may be permissible to conclude that an overall design was

defective, as opposed to a mechanical failure of its many (and here, unknown) parts, but doing so

must be based on facts, tests, analyses, etc.  Dr. Ravani has not articulated a theory as to how the

airbag system was defectively designed and thus his hypothesis cannot be tested and alternative

hypotheses cannot be ruled out.  *See* Fed. R. Evid. 702 advisory committee's notes to 2000

amendments (listing testing of a theory and accounting for alternative explanations as two

components of the reliability analysis); *Zenith Elec. Corp. v. WH–TV Broad. Corp.*, 395 F.3d

416, 419 (7th Cir. 2005) (noting that "conclusions that are not falsifiable aren't worth much to

either science or the judiciary").  "[T]here is simply too great an analytical gap between the data

and the opinion proffered." *Gen. Elec. Co.,* 522 U.S. at 146; *see* Fed. R. Evid. 702 advisory

committee's notes to 2000 amendments (listing as a reliability factor "whether the expert has

unjustifiably extrapolated from an accepted premise to an unfounded conclusion").  Dr. Ravini

may testify about his opinions on the truck's speed, the severity of the impact, the industry

standard deployment threshold—none of which Defendant sought to exclude—but he may not

testify that the airbag failed to deploy because it was defectively designed.

    **ii.**       **Testimony Concerning Defects in Seat Belt System**

Defendant argues Dr. Ravani should be barred from testifying as to any alleged design or manufacturing defect in the seat belt system because he did not utilize reliable methodology. Mem. Supp. Mot. Bar Expert Test. 10–12. Plaintiff responds that Dr. Ravani properly relied on his reconstruction analysis and its impact on Bensenberg's kinematics to conclude that the seat belt failed to protect her from making contact with the steering wheel. Resp. Mot. Bar Expert Test. 15–17.

Dr. Ravani concluded that "assum[ing] that the accident was of severity that was below the threshold for airbag deployment, then the seatbelt did not provide the needed protection either due to defective design of the seatbelt system or because her seat was in the front zone." Ravani Report 19. Essentially, Dr. Ravani concluded, based on his inspection of the vehicle and the location of Bensenberg's bruises, that she hit the steering wheel with her face and chest and, therefore, the seat belt system was defective. *See id.* at 11–12, 18–19. However, Dr. Ravani did not explain how he reached this conclusion. He admitted he did not find a defect in any of the seat belt system components. Ravini Dep. 132:1–134:14 (identifying the properly functioning components—lap and shoulder belts, pretensioner, D-ring, latch plate, buckle, webbing). He measured the seat position, *id*. at 132:22, but there is no indication that he measured the seat belt length that was locked into position by the pretensioner, *see id*. at 136:10–137:5. He also failed to measure whether the seat belt in its locked position would allow contact with the steering wheel when the seat was in the front zone, *id*. at 138:21 (indicating that Bensenberg was five feet tall); *id.* at 139:23–140:5, 140:25–141:4, or "determine if and how a surrogate of Ms. Bensenberg's height and stature could reach the steering wheel while properly belted," Mem. Supp. Mot. Bar Expert Test. 11 (citing Ravini Dep. 139:4–22). Lastly, Dr. Ravini acknowledged that Bensenberg's accident was caused when she blacked out while driving and that she may

12

have slumped forward as a result.  Ravini Report 10; Ravini Dep. 143:21–24.  Even so, he did

not measure or calculate the potential consequence of that conclusion, such as the distance

between the likely slump and the steering wheel while the seat was in the front zone.  Mem.

Supp. Mot. Bar Expert Test. 12; Ravani Dep. at 145:11–21.  Even if making contact with the

steering wheel could demonstrate a defective seat belt under certain circumstances, Dr. Ravani

has not gathered data to support his conclusion.

Again, Plaintiff acknowledges this deficit: "Dr. Ravani was unable . . . to determine the

underlying cause for the failing airbag and/or the seatbelt . . . ."  Resp. Mot. Bar Expert Test. 17.

Dr. Ravini's conclusion that the seat belt was defective because it did not prevent Bensenberg

from sustaining injury is not supported by rigorous, objective, and verifiable methodology and

must be excluded.  Like his airbag system conclusion, "there is simply too great an analytical gap

between the data and the opinion proffered."  *Gen. Elec. Co.*, 522 U.S. at 146.

### iii.  Testimony Concerning Warning

Finally, Defendant argues that Dr. Ravani should be barred from testifying as to any

alleged failure to warn because he is not qualified to render a warnings opinion, Mem. Supp.

Mot. Bar Expert Test. 17–18, and his opinion is unreliable, *id*. at 15–17.  Plaintiff counters that

since the truck's seat sensor recorded the seat's position, it could easily have "triggered a

warning that the positioning" of the seat in the front zone "could inhibit the restraint system from

protecting the driver upon impact" but otherwise does not respond to any of Defendant's

arguments.  Resp. Mot. Bar Expert Test. 17.  Plaintiff's failure to respond to the motion in limine

seeking to exclude Dr. Ravani's testimony regarding Defendant's failure to warn demonstrates

the point is conceded.  *See Bogathy v. Union Pac. R.R.*, No. 17-CV-4290, 2020 WL 419406, at

*7 & n.4 (N.D. Ill. Jan. 24, 2020) (recognizing that failing to respond to motion to exclude is waiver).

Even if the Court overlooks Plaintiff's waiver and considers whether Dr. Ravani is qualified, it would agree with Defendant that Plaintiff has failed to demonstrate Dr. Ravani is an expert on warnings.  An expert may be qualified "by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony."  *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990).  "[C]ourts impose no requirement that an expert be a specialist in a given field."  *Gayton*, 593 F.3d at 617 (quoting *Doe v. Cutter Biological, Inc.*, 971 F.2d 375, 385 (9th Cir. 1992)).

Ravani has a Ph.D. in mechanical engineering from Stanford University and has been practicing in the fields of biomechanics and accident reconstruction and evaluating crash protection systems for over 35 years.  Ravani Report ¶¶ 3, 5, 6; Ravani Dep. 12:22–13:1.  Dr. Ravani performs research and consulting work in accident reconstruction, kinematics, and biomechanical analysis for personal injury accidents.  Ravani Report ¶ 5.  He has been a professor of mechanical engineering and biomedical engineering at the University of California-Davis since 1987.  Ravani CV 2, Ravani Decl. I Ex. A., ECF No. 48-3.  He teaches a class focused on applying stress, strain, and force analysis "to deformable bodies[] and how to design to avoid failure."  Ravani Dep. 48:16–49:2.  He has also taught a class on biomechanics and the dynamics and kinematics involved and how forces get transmitted in an automobile accident.  *Id.* at 51:13–25.  The class also considered how "crash protection devices have been developed, including the restraint system, and . . . collapsing the steering column . . . [to] attenuat[e] the

14

forces of impact or chang[e] the kinematics of the occupant so that potential for forces that could

be applied on the body of the occupants could be reduced." *Id*. at 52:2–8.  The course did not

"evaluat[e] the components of the seat belt, or evaluat[e] the specific components or

instrumentation related to these things [because he was] not an instrumentation engineer or a

technician." *Id*. at 52:24–53:2.  The Court finds no reference here to "knowledge, skill,

experience, training, or education," Fed. R. Evid. 702, on the topic of warnings to demonstrate

that Dr. Ravani is qualified to opine on a manufacturer's failure to warn regarding airbags or seat

belts and Plaintiff has not otherwise established any of Dr. Ravani's education or training would

be helpful to this analysis. *See Moore v. P & G-Clairol, Inc.*, 781 F. Supp. 2d 694, 704 (N.D. Ill.

2011) (concluding that a scientist familiar with mixing chemicals was not qualified to opine

about the efficacy of a warning label because he had not established that he had "any particular

insight into how an average, non-scientist consumer would interpret the instructions at issue").

    Defendant's motion to bar is GRANTED.

## III.    Motion for Summary Judgment

### a.  Legal Standard on Motion for Summary Judgment

    Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A genuine issue of material fact exists when the evidence "is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  "In deciding a motion for summary judgment, the court can only consider evidence

that would be admissible at trial under the Federal Rules of Evidence." *Show v. Ford Motor Co.*,

697 F. Supp. 2d 975, 979 (N.D. Ill. 2010) (citing *Stinnett v. Iron Works Gym/Exec. Health Spa,

Inc.*, 310 F.3d 610, 613 (7th Cir. 2002)).  The court must view the admissible evidence "in the

light most favorable to the non-moving party[] and draw[] all reasonable inferences in that party's favor."  *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

### b.  Analysis

Defendant argues that without expert testimony, Plaintiff's claims fail.  Def.'s Mot. Summ. J. 6, 10–11, 15.

### i. Strict Liability Design and Manufacturing Defect

In Illinois, a "strict products liability claim may proceed under three different theories of liability: a manufacturing defect, a design defect, or a failure to warn."  *Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 108 (Ill. App. Ct. 2010).  To prove a design defect, a plaintiff must show:

> (1) a condition of the product as a result of manufacturing or design, (2) that made the product unreasonably dangerous, (3) and that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff, (5) that was proximately caused by the condition. The plaintiff has the burden of proof on each element.

*Mikolajczyk v. Ford Motor Co*., 901 N.E.2d 329, 345 (Ill. 2008).  "When proceeding under a manufacturing defect theory, [the plaintiff may use] the consumer-expectation test to determine whether the product is unreasonably dangerous."  *Salerno*, 932 N.E.2d at 109.  In other words, whether it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."  *Id.* at 109 (quotation marks omitted).  For an alleged design defect, the parties may use either the consumer-expectation test, *Suarez v. W.M. Barr & Co.*, 842 F.3d 513, 520 (7th Cir. 2016) (defining the test slightly differently as a product that "failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner" (quotation marks omitted)), or "[t]he risk-utility test[, which] asks if 'on balance the

16

benefits of the challenged design outweigh the risk of danger inherent in such designs,'" *id.* (quoting *Lamkin v. Towner*, 563 N.E.2d 449, 457 (Ill. 1990)).  But if the evidence implicates the risk-utility test, courts should use it because the "[consumer-expectations test] is incorporated into the former and is but one factor among many for the jury to consider."  *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 439 (7th Cir. 2019) (quoting *Mikolajczyk*, 901 N.E.2d at 352); *see also Ferraro v. Hewlett–Packard Co.*, 721 F.3d 842, 848 (7th Cir. 2013) ("Where the two tests yield conflicting results, . . . the risk-utility test trumps, and the product is deemed not unreasonably dangerous (notwithstanding consumers' expectations that the product would be safer)." (quotation marks omitted)).  The risk-utility test includes a non-exclusive and non-dispositive factors such as:

> (1) The usefulness and desirability of the product to the user and to the public at large;
> (2) The likelihood that the product will cause injury, and if so, how serious that injury might be;
> (3) The availability of substitutes that would meet the same need in a safer way;
> (4) The feasibility for the manufacturer to eliminate the unsafe characteristics without either impairing utility or driving cost up too high;
> (5) The user's ability to avoid danger by the exercise of care;
> (6) The user's probable awareness of dangers inherent in the product, either through general public knowledge or suitable warnings or instructions;
> (7) The manufacturer's ability to obtain liability insurance.

 *Clark*, 929 F.3d at 439 (citing *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 264–65 (Ill. 2007)).

"'[P]roducts liability actions . . . often involve specialized knowledge or expertise outside the layman's knowledge' and so may require expert testimony."  *Id.* at 440 (second alteration in original) (quoting *Baltus v. Weaver Div. of Kidde & Co.*, 557 N.E.2d 580, 588 (Ill. App. Ct. 1990)); *see also Baltus*, at 589–90 (distinguishing between simple products that do not require expert testimony, like a chair, and those that do, like a transmission jack)); *Klootwyk v.*

*DaimlerChrysler Corp.*, No. 01 C 6127, 2003 WL 21038417, at *3 (N.D. Ill. May 7, 2003) (rejecting as speculation plaintiff's lay opinion that "her husband would not have sustained fatal injuries without a defect in design or manufacture being present" and holding that it was insufficient to establish the driver-side airbag was unreasonably dangerous because the case "involve[d] technical matters beyond the common knowledge and experience of jurors").

In *Show v. Ford Motor Co*., 659 F.3d 584 (7th Cir. 2011), the plaintiff, who had been driving a Ford Explorer that rolled during an accident, sued the manufacturer under a defective design theory. *Id*. at 584–85. The court reviewed Illinois's product liability tests and rejected the plaintiff's contention that jurors need consider only their own experience to find "liability under the consumer-expectation approach." *Id*. at 585 ("Several intermediate appellate decisions in Illinois say that expert testimony is vital in design-defect suits when aspects of a product's design or operation are outside the scope of lay knowledge."). "Because consumer expectations are just one factor in the inquiry whether a product is unreasonably dangerous, a jury unassisted by expert testimony would have to rely on speculation." *Id*. at 588. Thus, where a plaintiff lacks admissible expert testimony to prove that a design or manufacturing defect in a specialized piece of equipment renders it unreasonably dangerous under either theory, the court must grant summary judgment to the defendant. *See Clark*, 929 F.3d at 440 (affirming district court's entry of summary judgment after the plaintiff's expert was excluded because the defective car crusher's safe alternative design was within province of an expert and outside scope of lay knowledge).

Defendant argues that Dr. Ravani provides no evidence that the airbag and seat belt systems were defective and therefore, Plaintiff cannot establish his claims. Reply 6–7, ECF No. 56. Plaintiff argues that that he "is proceeding under the consumer-expectation test to prove that

the 2008 Chrysler Aspen contained an unreasonably dangerous defect, and/or the failure of the manufacturer to adequately warn consumers of a product's dangerous propensities."  Resp. Mot. Summ. J. 13, ECF No. 49 (citing *Lamkin*, 563 N.E.2d at 457).

The seat belt system and the airbag are not simple products.  Although most layman are familiar with them, how they work in a general sense, and what they aim to prevent, most laymen do not know how they are designed.  It is not obvious what seat belt or airbag components are hidden from view, how each of the systems draw information and measure it, how they are affected by other systems in the car, the type of events/forces that trigger them to react, etc.  Expert testimony is required to help the trier of fact determine that an airbag or seat belt system, which are complex products, was unreasonably dangerous under the consumer expectations test or the risk-utility test due to a defective design or manufacturing process.  *See Clark*, 929 F.3d at 440.  Dr. Ravani's testimony on these points was excluded.  Without such evidence Plaintiff cannot prove his strict liability claims.

### ii.        Negligent Design & Manufacturing Defect

Claims of negligent design or manufacture in product liabilities actions require proof of duty, breach, proximate cause, and damages.  *Jablonski v. Ford Motor Co*., 955 N.E.2d 1138, 1153–54 (Ill. 2011).  "Like strict liability, negligence focuses on the allegedly unreasonably dangerous condition of a product."  *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 849 (7th Cir. 2017) (citing *Calles*, 864 N.E.2d at 263–64).  The risk-utility test is applicable to negligence claims as well.  *Jablonski*, 955 N.E.2d at 1155 (concluding that the test "is essentially identical to the test applied in determining whether a defendant's conduct in designing a product is unreasonable").

Defendant argues Plaintiff has not provided any evidence that Defendant breached a duty in the design or manufacture of the Aspen and Dr. Ravani cannot testify that the airbag or seat belt systems were unreasonably dangerous.  Def.'s Mot. Summ. J. 10–11.  Negligence claims regarding complex products require expert testimony.  *Salerno*, 932 N.E.2d at 112 (holding that the plaintiff must provide expert testimony to establish that the manufacturer deviated from the standard of care "[b]ecause products liability actions involve specialized knowledge or expertise outside of a layman's knowledge").  Dr. Ravani's conclusory defective design opinions regarding the airbag and seat belt systems have been excluded.  Defendant is entitled to summary judgment on these claims.

### iii.        Strict Liability & Negligent Failure to Warn

There are two duties underlying failure to warn cases: a duty to warn of a foreseeable danger and a duty to provide adequate instructions for safe use.  "[T]o establish a strict liability failure to warn claim under Illinois law, a plaintiff must prove that the manufacturer did not disclose an unreasonably dangerous condition or instruct on the proper use of the product as to which the average consumer would not be aware," *Norabuena v. Medtronic, Inc.*, 86 N.E.3d 1198, 1207 (Ill. App. Ct. 2017), and that this failure to disclose proximately caused the plaintiff's injuries, *Solis v. BASF Corp.*, 979 N.E.2d 419, 439 (Ill. App. Ct. 2012).  "Similarly, in order to prove a negligent failure to warn claim, a plaintiff must show that the manufacturer negligently failed to instruct or warn of a danger of the product and that failure proximately caused the plaintiff's injuries." *Norabuena*, 86 N.E.3d at 1207.

Defendant argues that with Dr. Ravani's opinions excluded, Plaintiff cannot provide any admissible evidence to support his failure to warn claims.  *See* Def.'s Mot. Summ. J. 12–15.  Plaintiff asserts Dr. Ravani's remaining opinions indicate that the airbag did not deploy and the

seatbelt did not prevent Bensenberg from impacting the steering wheel while seated in the front zone, therefore, it seems to Plaintiff, the systems were defective and Defendant was obligated to warn that sitting in the front zone was dangerous.  Resp. Mot. Summ. J. 22–24.  The airbag's failure to deploy and the seat belt's failure to protect Bensenberg from impacting the steering wheel is not evidence that either system was unreasonably dangerous requiring a disclosure or a warning.  Plaintiff has not established that Defendant is liable under strict liability or negligence theories for an airbag or seat belt system design defect, a manufacturing defect, or for failing to warn that these systems were unreasonably dangerous.

## CONCLUSION

Defendant FCA US LLC's Daubert Motion to Bar the Testimony of Plaintiff Bradley Bensenberg's Liability Expert, Bahram Ravani, Ph.D. and Request for Oral Argument, ECF No. 41, is GRANTED IN PART and MOOT IN PART.[7]  Defendant's Motion to Strike Declarations of Plaintiff's Liability Expert, Bahram Ravani, Ph.D, ECF No. 54, is DENIED.  Defendant's Motion for Summary Judgment Pursuant to Rule 56 and Local Rule 7.1(D), ECF No. 43, is GRANTED, and Motion to Strike Brad Bensenberg's Declaration, ECF No. 53, is GRANTED IN PART and DENIED IN PART.  The Clerk is directed to enter judgment and close the case.

Entered this 30th day of November, 2020.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE

[7] Since the Court grants summary judgment in Defendant's favor on liability, it did not reach Defendant's Motion to Bar testimony regarding Bensenberg's neck fracture and it is MOOT.